UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| WHITTLESTONE, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>HANDI-CRAFT COMPANY, a Missouri corporation,<br><br>　　　　Defendant. | Case No: C 08-04193 SBA<br><br>**ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Docket 103. |

On September 4, 2008, Plaintiff Whittlestone, Inc. ("Whittlestone") brought this breach of contract action against Defendant Handi-Craft Company ("Handi-Craft"). Compl., Dkt. 1. The parties are presently before the Court on Handi-Craft's motion for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Dkt. 103. Whittlestone opposes the motion. Dkt. 112. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Handi-Craft's motion for partial summary judgment, for the reasons stated below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

I.  **BACKGROUND**

On March 23, 2006, Whittlestone, a California corporation with its principal place of business in California, and Handi-Craft, a Missouri corporation with its principal place of business in Missouri, entered into a written, twenty-year contract for the sale of Whittlestone products to Handi-Craft for resale to third parties including stores such as Babies "R" Us. Compl. ¶¶ 1-2, 5-6. Dkt. 1. Under the terms of the contract, Handi-Craft

was obligated to make annual minimum unit purchases or alternatively minimum purchase amounts of Whittlestone products. Id. ¶ 6.

The contract provides, in relevant part:

5. Term. The 'Term' of this Agreement shall begin on the date of this Agreement and end after the initial term described below, unless sooner terminated pursuant to the Agreement.
. . . .

20. Termination.

a. This Agreement may be terminated as to any or all of the Whittlestone Products at any time by the mutual written consent of both parties.

b. This Agreement may be terminated as to any or all of the Whittlestone Products by Handi-Craft upon at least forty-five (45) days prior written notice to Whittlestone in the event of the occurrence of any of the following events and Whittlestone's failure to cure said default within said time:

1. The insolvency of Whittlestone;. . . .

2. If Whittlestone shall at any time commit a breach of its obligations or fails or omits to perform any of its material obligations contained herein.

c. This Agreement may be terminated as to any or all of the Whittlestone Products by Whittlestone upon at least forty-five (45) days prior written notice to Handi-Craft in the event of the occurrence of any of the following events and Handi-Craft's failure to cure said default within said time:

1. The insolvency of Handi-Craft;. . . .

2. If Handi-Craft shall at any time commit a breach of its obligations or fails or omits to perform any of its material obligations contained herein.

d. Neither party, by reason of the termination or nonrenewal of this Agreement for any or all of the Whittlestone Products, shall be liable to the other for compensation, reimbursement or damages because of the loss of anticipated sales or prospective profits or because of expenditures, investments, leases, property improvements or other matters related to the business or good will of either party.
. . . .

f. Upon termination of this Agreement as to any or all of the Whittlestone Products as a result of a material breach by Whittlestone, Handi-Craft, at its option, shall be relieved from any obligation to distribute any further shipment of any Whittlestone Products and may cancel all of its unshipped orders for such Whittlestone Products. . . . Upon termination of this Agreement as to any or all of the Whittlestone Products as a result of a material breach by Handi-Craft, Whittlestone at its option, shall be relieved from any obligation to ship any further shipment of any Whittlestone Products, and Handi-Craft must accept delivery of any remaining shipped or unshipped orders for such Whittlestone Products and Handi-Craft will be held liable for any and all such orders.
. . . .

> i. This Agreement may be terminated by Whittlestone, at any time after the date that is eighteen (18) months following a Change in Control in the ownership of Handi-Craft upon ten (10) days prior written notice to Handi-Craft.
>
> j. This Agreement may be terminated by HandiCraft, at any time after the date that is eighteen (18) months following a Change in Control in the ownership of Whittlestone upon ten (10) days prior written notice to Whittlestone.

Compl., Exh. 1.

On June 12, 2008, approximately two years into the twenty-year term, Handi-Craft terminated the contract. See Compl. ¶ 10. On September 4, 2008, Whittlestone commenced the instant action, alleging that Handi-Craft breached the terms of the contract by improperly terminating the contract and by failing to purchase products in the minimum amounts required by the contract. Id. ¶¶ 10, 16. The original complaint requested damages, "including loss of the value of the twenty year contract for Whittlestone products including minimum annual unit or dollar purchases by Handi-Craft, lost profits, consequential damages, [and] otherwise unearned credits and discounts granted to Handi-Craft is [sic] excess of $250,000." Id. ¶ 17. The original complaint also requested restitutionary relief. See id. ¶¶ 19-22.

On October 9, 2008, Handi-Craft filed a Rule 12(f) motion to strike the portions of Whittlestone's complaint that sought the recovery of lost profits and consequential damages. Dkt. 12. In its motion, Handi-Craft claimed that such damages were barred by Paragraph 20(d) of the contract. Id.

On November 19, 2008, this Court granted Handi-Craft's motion to strike on the ground that Whittlestone is precluded as a matter of law under Paragraph 20(d) of the contract from recovering the damages set forth in Paragraph 17 of the complaint. See Dkt. 28. Accordingly, the Court struck Whittlestone's claim for "lost profits," "consequential damages," the "loss of value of the twenty year contract for Whittlestone products including minimum annual unit or dollar purchases by Handi-Craft," and other "unearned credits and discounts" from the complaint. See id.

On December 5, 2008, Whittlestone filed a first amended complaint. Dkt. 31. On June 3, 2009, the Court granted Whittlestone's unopposed motion to dismiss this action with prejudice. Dkt. 67.

Whittlestone filed a notice of appeal on June 29, 2009, which states that Whittlestone "appeals to the . . . the Ninth Circuit from the final judgment filed on June 3, 2009, the Order granting [Handi-Craft's] motion to strike filed on November 19, 2008, [and] the Order denying [Whittlestone's] motion for leave to file a motion for reconsideration or clarification filed on February 11, 2009 . . ." Dkt. 68. On August 17, 2010, the Ninth Circuit issued a decision reversing this Court's Order granting Handi-Craft's motion to strike, holding that "Rule 12(f) does not authorize a district court to strike claims for damages on the ground that such claims are precluded as a matter of law." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974-975 (9th Cir. 2010). The Ninth Circuit remanded the case "with specific instructions to not dismiss Whittlestone's claim for lost profits and consequential damages under a Rule 12(f) motion." Id. at 976

On June 8, 2011, Whittlestone filed a second amended complaint ("SAC"), which alleges three claims: (1) breach of contract; (2) specific performance; and (3) restitution. See SAC, Dkt. 85. Whittlestone alleges that Handi-Craft breached the parties' contract by "its purported termination of the contract contrary to the terms of the agreement and effective repudiation of the contract, by failing and refusing to purchase products in the minimum amounts required by the contract and by failing to use best efforts to sell the Whittlestone Products." SAC ¶¶ 12, 18. As for Handi-Craft's improper termination, Whittlestone alleges that Handi-Craft terminated the contract without providing any written notice of a material breach by Whittlestone or a demand that Whittlestone cure the breach. See id. ¶ 12. According to Whittlestone, it has suffered damages in excess of $250,000 as a result of Handi-Craft's breach. Id. ¶ 19. By this action, Whittlestone seeks compensatory damages or, in the alternative, specific performance of the contract, plus incidental damages. See id. at Prayer for Relief.

On May 14, 2012, Handi-Craft filed a motion for partial summary judgment. Dkt.

103. Whittlestone filed an opposition on May 29, 2012. Dkt. 112. A reply was filed on June 5, 2012. Dkt. 113.

## II. DISCUSSION

### A. Legal Standard

"A party may move for summary judgment, identifying each claim . . . or the part of each claim . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. Id.

The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." Anderson, 477 U.S. at 256. Once the moving party has met its burden, the burden shifts to the nonmoving party to designate specific facts showing a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. See Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 532 (9th Cir. 2011); Orr v. Bank of Am., NT & SA, 285 F.3d 764, 772 (9th Cir. 2002); see also Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . ." Anderson, 477 U.S. at 255.

///

### B. Motion for Partial Summary Judgment

Handi-Craft moves for partial summary judgment on Whittlestone's breach of contract claim on the ground that Whittlestone is precluded as a matter of law from recovering lost prospective profits and other consequential damages under Paragraph 20(d) of the contract. Handi-Craft's Mtn. at 2. More specifically, Handi-Craft contends that partial summary judgment is warranted because "[t]he language of Paragraph 20(d) is clear and unambiguous," and provides that "[i]n the event that either party terminates the contract, neither party is liable for 'loss of anticipated sale[s] or prospective profits' or other consequential damages." Id. at 7. According to Handi-Craft, the only reasonable interpretation of Paragraph 20(d) is that the parties "intended to disclaim their respective abilities to recover prospective lost profits damages in the event a party terminated . . . the [contract], whether the termination was authorized or disputed." Handi-Craft's Reply at 8, Dkt. 113. In fact, Handi-Craft argues that Paragraph 20(d) precludes Whittlestone from recovering prospective lost profits damages even if "Handi-Craft terminates the [contract] . . . due to Handi-Craft's alleged breach." Id. at 1.

In response, Whittlestone contends that "[t]here are numerous independent reasons why [Handi-Craft's] motion must be denied[,] the most glaring of which is that [Handi-Craft's] precise argument was explicitly rejected by the Ninth Circuit in an opinion which is law of this case and binding precedent on similar cases." Whittlestone's Opp. at 1. According to Whittlestone, the Ninth Circuit determined that the language of Paragraph 20(d) is ambiguous because it is reasonably susceptible to Whittlestone's interpretation; namely, that the damages limitation set forth in Paragraph 20(d) of the contract only applies if the contract is terminated in accordance with the terms of the contract, which only authorize termination in narrowly-defined circumstances. See id. at 1-2. Whittlestone contends, among other things, that Handi-Craft's motion for partial summary judgment should be denied because ambiguity in a contract raises a question regarding the parties' intent, which is a fact question precluding summary judgment. Id. at 2.

"The interpretation of contracts under California law involves a complex interplay of questions of fact and questions of law." City of Santa Clara v. Watkins, 984 F.2d 1008, 1012 (9th Cir. 1993). The threshold question in interpreting a contract or its provisions is "whether the contested terms are ambiguous." Id. Whether a written contract is ambiguous is a question of law to be decided by the court. Brobeck, Phleger & Harrison v. Telex Corp., 602 F.2d 866, 871 (9th Cir. 1979), cert. denied, 444 U.S. 981 (1979).

A court can determine whether the contract is ambiguous on its face or by using extrinsic evidence of the parties' intent. See Oceanside 84, Ltd. v. Fidelity Fed. Bank, 56 Cal.App.4th 1441, 1448 (1997). "If a contract is capable of two different reasonable interpretations, the contract is ambiguous." Id.

In contract cases, summary judgment is appropriate only if the contract or the contract provision in question is unambiguous. National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983); see Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 990 (9th Cir. 2006) (on a motion for summary judgment, a court may properly interpret a contract as a matter of law only if the meaning of the contract is unambiguous). "The rationale for this proposition is simple: ambiguity in a contract raises a question of intent, which is a fact question precluding summary judgment." National Union Fire Ins. Co., 701 F.2d at 97.

As an initial matter, the Court rejects Whittlestone's contention that Handi-Craft's argument in support of its motion for partial summary judgment is foreclosed by the law of the case doctrine. The portion of the Ninth Circuit's opinion that Whittlestone relies on is dicta, which is not law of the case. See Rebel Oil Co., Inc. v. Atl. Richfield Co., 146 F.3d 1088, 1093 (9th Cir. 1998) (A significant corollary to the law of the case doctrine is that dicta does not have preclusive effect.) (citation omitted); Ducey v. United States, 830 F.2d 1071, 1072 (9th Cir. 1987) ("Dicta is not given preclusive effect under the law of the case

doctrine in this circuit.").[1]  In footnote two of the Ninth Circuit's opinion, the court in dicta stated:

> Even were we to examine the district court's actions under Rule 12(b)(6), we would be required to hold that the district court erred in dismissing Whittlestone's claim for lost profits and consequential damages.
>
> Under both California law and Missouri law, '[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.' Cal. Civ.Code § 1641; Myers v. Union Elec. Light & Power Co., 334 Mo. 622, 66 S.W.2d 565, 568 (1933). Reviewing the entirety of the contract to determine the meaning of 'termination' as used in Paragraph 20(d) and 'constru[ing] the pleadings in the light most favorable to the nonmoving party,' Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005), it appears the district court erred by ruling that Paragraph 20(d) necessarily precluded recovery of the damages sought by Whittlestone.
>
> The contract states that the agreement is for a twenty-year term, 'unless sooner terminated pursuant to the Agreement,' suggesting that a termination must be done exclusively according to the terms of the contract.  In a subsequent paragraph, Paragraph 20 entitled *'Termination*,' the contract prescribes four methods for terminating the contract.  First, it notes that the contract may be terminated 'by the mutual written consent of both parties.' Paragraph 20(a).  Second, either party may terminate the contract, upon giving forty-five days prior written notice and a chance to cure, if the other party becomes insolvent.  Paragraph 20(b)(1) & (c)(1).  Third, either party may terminate the contract, upon giving forty-five days prior written notice and a chance to cure, if the other party breaches a material obligation under the contract.  Paragraph 20(b)(2) & (c)(2).  And finally, either party may terminate the contract if there is a change in control in the ownership of the other party.  Paragraph 20(i) & (j).  These are the only four methods for terminating the contract 'spelled out' in Paragraph 20; unilateral withdrawal of a party from the contact is not one of them.  Thus, as Whittlestone plausibly argues, 'interpreting paragraph 20(d) in light of the other provisions in the agreement, . . . a "termination" [triggering] the damages limitation provision [of Paragraph 20(d) ] must be a termination under one of the four grounds and procedures specified elsewhere in paragraph 20 (or the expiration of the 20-year term of the agreement)."  Therefore, construing the pleadings in the light most favorable to Whittlestone, Whittlestone's claim for damages survives because the contract arguably was not terminated pursuant to Paragraph 20(d).
>
> Pointing to language in paragraph 20(f) of the contract that described 'termination . . . as a result of a material breach by [the parties],' the district court found that the 'the term "termination" and the ensuing damage

---

[1] "Dictum," the singular form of "dicta," is a remark "by the way" and is a shortened version of "obiter dictum," which is a Latin phrase often translated as "something said in passing."  Black's Law Dictionary 519, 1177 (9th ed. 2009).  Black's Law Dictionary defines "obiter dictum" as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)."  Id. at 1177.

> limitation set forth in Paragraph 20(d) apply to terminations derived from breaches of the Agreement.' The district court reasoned that, '[t]his language demonstrates that the parties intended "termination," as used in the Agreement, to encompass termination resulting from a material breach of the Agreement.' Construing the pleadings in the light most favorable to Whittlestone, however, this reasoning fails. Whittlestone does not dispute that the contract can be terminated by one party's material breach of the contract. Rather, Whittlestone argues that, under Paragraph 20(b)(2) & (c)(2) of the agreement, in the event of a breach of contract the contract may be terminated only by the *non-breaching party*. Thus, because HandiCraft was the breaching party, it could not terminate the contract pursuant to Paragraph 20(b)(2). Paragraph 20(f) is not inconsistent with this proposition, as it speaks in terms of the non-breaching party being able to terminate upon breach by the other party. Therefore, Whittlestone's interpretation of the contract was at least as plausible as Handi-Craft's, and the district court erred by ruling that Whittlestone's proffered interpretation necessarily failed as a matter of law.
>
> Construing the pleadings in the light most favorable to Whittlestone, it appears Whittlestone's claim for lost profits and consequential damages is not per se barred by the contract. The parties may well argue at a later stage of litigation that the intent of the parties or properly admitted extrinsic evidence supports their respective interpretations of the contract. ASP Props. Group v. Fard, Inc., 133 Cal.App.4th 1257, 35 Cal.Rptr.3d 343, 349 (2005); Good Hope Missionary Baptist Church v. St. Louis Alarm Monitoring Co., Inc., 306 S.W.3d 185, 192 (Mo. App. 2010). Such factually based arguments are appropriate on remand at a later stage of litigation, not on the pleadings.

Whittlestone, 618 F.3d at 975 n. 2 (italics in original).

While footnote two of the Ninth Circuit's opinion is not law of the case, the Court finds that the reasoning set forth therein is persuasive. The Court therefore rejects Handi-Craft's contention that partial summary judgment is warranted on the ground that the "clear and unambiguous" language of Paragraph 20(d) expressly precludes Whittlestone from recovering lost prospective profits and other consequential damages.[2]

Viewing the contract language in the light most favorable to Whittlestone and drawing all justifiable inferences in its favor, Whittlestone's claim for lost profits and consequential damages is not per se barred by the contract as Handi-Craft argues. Contrary to Handi-Craft's contention, it is not "clear" from the language of the contract that liability for lost prospective profits and other consequential damages is precluded as a matter of law

---

[2] In its motion papers, Handi-Craft did not produce extrinsic evidence in support of its interpretation of the contract. Instead, Handi-Craft argues that partial summary judgment is warranted based on the "clear and unambiguous" language of the contract.

upon the termination of the contract regardless of whether the termination is authorized under the contract. The Court agrees with the Ninth Circuit that the language of Paragraph 20(d) is reasonably susceptible to the interpretation urged by Whittlestone; namely, that the damages limitation set forth in Paragraph 20(d) of the contract only applies if the contract is terminated in accordance with the terms of the contract, which authorize termination only in narrowly-defined circumstances. As such, the Court finds that Paragraph 20(d) is ambiguous on its face because it is susceptible to the respective interpretations offered by the parties.[3] Tanadgusix Corp. v. Huber, 404 F.3d 1201, 1205 (9th Cir. 2005) (" 'A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation.' ").

Accordingly, because ambiguity in a contract raises a fact question regarding the parties' intent, Handi-Craft's motion for partial summary judgment is DENIED. See National Union Fire Ins. Co., 701 F.2d at 97; see also Maffei v. N. Ins. Co. of N.Y., 12 F.3d 892, 898 (9th Cir. 1993) (when a contract provision is ambiguous, "ordinarily summary judgment is improper because differing views of the intent of parties will raise genuine issues of material fact"); Byrne v. Laura, 52 Cal.App.4th 1054, 1066-1067 (1997) (where an agreement is reasonably susceptible of different interpretations, summary judgment is an inappropriate means of resolving the ambiguity). By failing to demonstrate that the contract is unambiguous, Handi-Craft has failed to sustain its burden under Rule 56(a) to show that "there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[4]

Finally, the Court notes that Handi-Craft argues for the first time in its reply brief that extrinsic evidence supports its interpretation of the contract. Handi Craft's Rep. at 10-12. In support of its position, Handi-Craft has submitted two declarations and exhibits,

---

[3] To the extent that Whittlestone has produced extrinsic evidence in support of its interpretation of the contract, the Court need not consider this evidence given that an ambiguity appears on the face of the text itself.

[4] In light of the Court's ruling, it need not consider Whittlestone's alternative arguments in opposition to Handi-Craft's motion for partial summary judgment.

which it claims supports its interpretation of the contract. Ordinarily, the Court does not consider new legal arguments or evidence presented in a reply brief. In re Rains, 428 F.3d 893, 902 (9th Cir. 2005); see Coleman v. Quaker Oats Co., 232 F.3d 1271, 1289 n. 4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first time in a reply brief."); Tovar v. U.S. Postal Serv., 3 F.3d 1271, 1273 n. 3 (9th Cir. 1993) ("To the extent that the [reply] brief presents new information, it is improper. Therefore, [certain] portions of the brief are ordered stricken [.]"). However, given that Whittlestone has filed a response to Handi-Craft's reply, the Court will consider the new legal argument and evidence submitted by Handi-Craft in connection with its reply brief. Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the non-movant an opportunity to respond).

In support of its interpretation of the contract, Handi-Craft submitted the declaration of Carl Rhodes ("Rhodes"), the Chairman and CEO of Handi-Craft. Rhodes Decl. ¶ 1, Dkt. 115. In his declaration, Rhodes attests that on March 6, 2006 he and Whittlestone's President, Jason Clute ("Clute"), participated in a meeting in which they discussed that the contract would contain a provision (which would ultimately become Paragraph 20(d)) preventing both Handi-Craft and Whittlestone from obtaining lost profits in the event of a dispute. Id. ¶¶ 9-11. Rhodes attests that at this meeting Clute did not disagree with his understanding that the provision would "prevent recovery of lost profits in any dispute," nor did Clute object to the provision being included in the contract. Id. ¶ 12. In fact, according to Rhodes, Clute agreed that the provision was appropriate because the parties were unsure whether their new collaboration would be successful and they did not want either company to be subject to claims for lost profits if the venture did not succeed. Id. Rhodes also attests that during the discussions between Handi-Craft and Whittlestone leading up to the execution of the contract, no representative of Whittlestone ever disputed that Paragraph 20(d) would prevent the recovery of lost profits should the agreement be terminated by either party. Id. ¶ 14.

In response, Whittlestone submitted the declaration of Clute. Clute Supp. Decl., Dkt. 118-2. In his declaration, Clute attests that the Rhodes' declaration is "false" in that at no time did he ever have a discussion with Rhodes about the meaning of the contract provision that would ultimately become Paragraph 20(d) of the contract. Id. ¶ 2. More specifically, Clute attests that Rhodes never stated to him, as Rhodes claims in his declaration, that Paragraph 20(d) "would prevent both Handi-Craft and Whittlestone from obtaining lost profits in the event of a dispute." Id. Clute also attests that he never told Rhodes or anyone else that he agreed that such a provision was appropriate or that he did not want either company to be subject to claims of lost profits if the venture did not succeed. Id. Clute further attests that the discussions which Rhodes claims occurred on March 6, 2006 never occurred, and that no one from Handi-Craft ever told him that Paragraph 20(d) prevented the recovery of lost profits in the event the contract was terminated improperly. Id. ¶¶ 2-3. According to Clute, it was, and is, his understanding that Paragraph 20(d) means that neither party is liable for certain damages if the contract is validly terminated prior to the 20-year term pursuant to the terms of the contract. Id. ¶ 4.

The Court finds that Handi-Craft has not shown that there is no genuine dispute as to any material fact and that its interpretation of Paragraph 20(d) is correct as a matter of law. The extrinsic evidence submitted by Whittlestone directly contradicts the extrinsic evidence submitted by Handi-Craft. As such, partial summary judgment is inappropriate. See First Nat'l Mortg. Co. v. Fed. Realty Inv. Trust, 631 F.3d 1058, 1067 (9th Cir. 2011) (if conflicting extrinsic evidence supports different interpretations of ambiguous contractual language, this poses a question of fact not amenable to summary judgment); Miller, 454 F.3d at 990 (if the interpretation of contractual language turns upon the credibility of conflicting extrinsic evidence, or if construing the evidence in the nonmovant's favor, the ambiguity can be resolved consistent with the nonmovant's position, summary judgment is inappropriate).

III. **CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Handi-Craft's motion for partial summary judgment is DENIED.

2. The parties shall meet and confer regarding the scheduling of the previously vacated pretrial conference and trial dates. If the parties reach an agreement, they shall file a stipulation with proposed dates. If the parties cannot reach an agreement, the parties shall file a joint statement setting forth their respective positions. The parties shall file a stipulation or joint statement within fourteen (14) days from the date this Order is filed.

3. This Order terminates Docket 103.

IT IS SO ORDERED.

Dated: 9/10/12

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge